## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TRAVIS ALEXANDER,**
**JESSICA ALEXANDER, and**
**DORIS SEELYE, individually**
**and on behalf of all others**
**similarly situated,**

                                      **CASE NO.:**

      **Plaintiffs,**

**v.**

**SPECTRUM CHARTERS, LLC,**

      **Defendant.**

_____/

## CLASS ACTION COMPLAINT

Plaintiffs, Travis Alexander, Jessica Alexander, and Doris Seelye (collectively "Plaintiffs"), file this Class Action Complaint against Spectrum Charters, LLC, ("Defendant" or "Charter"), on behalf of themselves and all others similarly situated. In support thereof Plaintiffs state as follows:

### INTRODUCTION

1. Defendant violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), by failing to provide Named Plaintiffs, Travis Alexander and Jessica Alexander, and the putative class members they seek to represent, with a COBRA notice that complies with the law.

2.      Despite having knowledge of and access to the Department of Labor's Model COBRA form, Defendant chose not to use the model form— but only to the extent it served Defendant's interests.

3.      The Defendant COBRA notice process pushes beneficiaries and participants, like Plaintiffs here, toward the marketplace and away from enrolling in COBRA continuation coverage, presumably to save Defendant money.  In fact, research shows that "…[the] average claim costs for COBRA beneficiaries exceeded the average claim for an active employee by 53%. The average annual health insurance cost per active employee was $7,190, and the COBRA cost was $10,988.14 The Spencer & Associates analysts contend that this indicates that the COBRA population is sicker than active-covered employees and that the 2% administrative fee allowed in the law is insufficient to offset the difference in actual claims costs." *Health Insurance Continuation Coverage Under COBRA*, <u>Congressional Research Service</u>, Janet Kinzer, July 11, 2013.  Thus, economics may push employers to push participants and beneficiaries away from electing COBRA coverage through the utilization of deficient COBRA forms.

4.      Rather than including all information required by law in a single notice "written in a manner calculated to be understood by the average plan participant," Defendant's COBRA notification process instead provides only part of the legally required information in haphazard, piece-meal fashion in disjointed documents mailed under separate cover.

5.      Unlike the Defendant notice, the Model DOL notice (attached hereto as Exhibit A) provides a nearly fool-proof way to elect COBRA coverage by providing in a single

document all statutorily-required information plan participants need to enroll in COBRA coverage.

6.      In sharp contrast, Defendant's multi-part COBRA notification system is not foolproof, much less legally compliant.  In fact, the Defendant COBRA notice is broken into two separate mailings which individually, and cumulatively, lack the information mandated by law.

7.      More specifically, attached as Exhibit B is Defendant's "COBRA Enrollment Notice."  This document violates 29 U.S.C. § 1166 because it is missing critical information mandated by 29 C.F.R. § 2590.606-4, as detailed herein.  This document by itself should have contained all of the necessary information mandated by 29 C.F.R. § 2590.606-4, and also on how to enroll in COBRA (evidenced by the name of its title).  But, it simply does not.

8.      To compound the confusion, upon information and belief, it is Defendant's pattern and practice to send a second letter, containing information on COBRA.

9.      Rather than utilizing the DOL Model Notice and sending a single COBRA notice "written in a manner calculated to be understood by the average plan participant" containing all required by law, Defendant instead opted to break the information into multiple documents, containing bits and pieces of information on COBRA.

10.     In fact, the DOL Model Notice was designed to avoid precisely the issues caused by Defendant's COBRA notification process.

11.     As a result of receiving the COBRA enrollment notice, Plaintiffs could not make an informed decision about health insurance and lost health coverage.

12.     Plaintiffs suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage and incurred medical bills, due to Defendant's deficient COBRA election notice.  In addition to a paycheck, health insurance is one of the most valuable things employees get in exchange for working for an employer like Defendant.  Insurance coverage has a monetary value, the loss of which is a tangible and an economic injury.

13.     And, not only did Plaintiffs lose their insurance coverage, after Plaintiff Jessica Alexander lost her insurance she incurred medical bills resulting in further economic injury.

14.     Likewise, because Plaintiff Travis Alexander lost his health insurance due to Defendant's deficient COBRA notice, he endured sickness without receiving much-needed medical care because he had no health insurance to pay for treatment.

15.     Defendant's deficient COBRA notice also caused Plaintiffs an informational injury when Defendant failed to provide them with information to which they were entitled to by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).  Through ERISA and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a).  Defendant injured Plaintiffs and the class members they seek to represent by failing to provide all information in its notice required by COBRA.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e) and (f), and also pursuant to 28 U.S.C. §§ 1331 and 1355.

17.     Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2). Additionally, ERISA § 502(e)(2) provides that venue is proper "where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2).   Because the breach at issue took place in this District, venue is also proper.

## SUPPORTING FACTS AND ALLEGATIONS

18.     The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute.

19.     Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan."  29 U.S.C. § 1161.

20.     Notice is of enormous importance. The COBRA notification requirements exist because employees are not expected to know instinctively of their right to continue their healthcare coverage.  COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4).

21.     This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor.  29 U.S.C. § 1166(a).

22.     The relevant regulations prescribed by the Secretary of Labor concerning notice of continuation of coverage rights are set forth in 29 C.F.R. § 2590.606-4 as follows:

(4) The notice required by this paragraph (b) shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:

(i) The name of the plan under which continuation coverage is available; and the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits;

(ii) Identification of the qualifying event;

(iii) Identification, by status or name, of the qualified beneficiaries who are recognized by the plan as being entitled to elect continuation coverage with respect to the qualifying event, and the date on which coverage under the plan will terminate (or has terminated) unless continuation coverage is elected;

(iv) A statement that each individual who is a qualified beneficiary with respect to the qualifying event has an independent right to elect continuation coverage, that a covered employee or a qualified beneficiary who is the spouse of the covered employee (or was the spouse of the covered employee on the day before the qualifying event occurred) may elect continuation coverage on behalf of all other qualified beneficiaries with respect to the qualifying event, and that a parent or legal guardian may elect continuation coverage on behalf of a minor child;

(v) An explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made;

(vi) An explanation of the consequences of failing to elect or waiving continuation coverage, including an explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act, with a reference to where a qualified

beneficiary may obtain additional information about such rights; and a description of the plan's procedures for revoking a waiver of the right to continuation coverage before the date by which the election must be made;

(vii)  A description of the continuation coverage that will be made available under the plan, if elected, including the date on which such coverage will commence, either by providing a description of the coverage or by reference to the plan's summary plan description;

(viii)  An explanation of the maximum period for which continuation coverage will be available under the plan, if elected; an explanation of the continuation coverage termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period;

(ix)  A description of the circumstances (if any) under which the maximum period of continuation coverage may be extended due either to the occurrence of a second qualifying event or a determination by the Social Security Administration, under title II or XVI of the Social Security Act (42 U.S.C. 401 et seq. or 1381 et seq.) (SSA), that the qualified  beneficiary is disabled, and the length of any such extension;

(x)  In the case of a notice that offers continuation coverage with a maximum duration of less than 36 months, a description of the plan's requirements regarding the responsibility of qualified beneficiaries to provide notice of a second qualifying event and notice of a disability determination under the SSA, along with a description of the plan's procedures for providing such notices, including the times within which such notices must be provided and the consequences of failing to provide such notices. The notice shall also explain the responsibility of qualified beneficiaries to provide notice that a disabled qualified beneficiary has subsequently been determined to no longer be disabled;

(xi)  A description of the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage;

(xii)  A description of the due dates for payments, the qualified beneficiaries' right to pay on a monthly basis, the grace periods

for payment, the address to which payments should be sent, and the consequences of delayed payment and non-payment;

(xiii) An explanation of the importance of keeping the administrator informed of the current addresses of all participants or beneficiaries under the plan who are or may become qualified beneficiaries; and

(xiv) A statement that the notice does not fully describe continuation coverage or other rights under the plan, and that more complete information regarding such rights is available in the plan's summary plan description or from the plan administrator.

23.     To facilitate compliance with these notice obligations, the United States Department of Labor ("DOL") issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4.

24.     A copy of the DOL's Model Notice is attached hereto as Exhibit A.

25.     In the event that an employer, like Defendant, declines to use the DOL Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, it is subject to statutory penalties of up to $110 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1). Additionally, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).

26.     Defendant failed to use the Model Notice and failed to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4 *et seq.*, as set forth below.

***Defendant's COBRA Notice Is Inadequate and Fails to Comply with the Law***

27.     Defendant partially adhered to the Model Notice provided by the Secretary of Labor, but only to the extent that served Defendant's best interests, as critical parts are omitted or altered in violation of 29 C.F.R. § 2590.606-4.

28.     Specifically, Exhibit B, which Defendant calls it "COBRA Enrollment Notice" violates:

**a.      29 C.F.R. § 2590.606–4(b)(4)(xii) because it fails to include an address indicating where COBRA payments should be mailed, a critical piece of information for any COBRA enrollment notice;**

**b.      29 C.F.R. § 2590.606-4(b)(4)(v) notice *itself* never actually explains how to enroll in COBRA, nor does it bother including a physical election form (both of which the model Department of Labor form includes);**

**c.      29 C.F.R. § 2590.606-4(b)(4)(i) because it fails to identify the Plan Administrator, or its address and phone number, and also fails to identify the COBRA administrator, Alight Solutions;**

**d.      29 C.F.R. § 2590.606-4(b)(4)(vi) because it fails to provide all required explanatory information;**

**e.      29 C.F.R. § 2590.606-4(b)(4)(vii) because it fails to name the plan for which continuation coverage will be available nor reference to the plan summary plan description;**

**f.      29 C.F.R. § 2590.606-4(b)(4) because Defendant has failed to provide a notice written in a manner calculated to be understood by the average plan participant.**

29.     In addition to Exhibit B, upon information and belief, Defendant sent to Plaintiffs and the putative class members a second letter containing information on COBRA styled "Important Information About Your COBRA Continuation Coverage", that contains some – but not all – of the above information missing from its COBRA enrollment notice.

30.     Defendant's attempt to cure the above deficiencies from Exhibit B, with a follow up letter only further demonstrates that Defendant *knew* it was required to provide all of the required information to Plaintiff in accordance with 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4 *et seq.*, but it simply chose not to do so, much less in the manner proscribed by the Model DOL COBRA notice.  And while Defendant was not legally obligated to utilize the Model DOL COBRA notice, its decision to deviate from the DOL Model notice while also not providing all of the statutorily proscribed information makes it subject to liability in this lawsuit.

### *Plaintiff Travis Alexander*

31.     Named Plaintiff Travis Alexander is a former employee of Defendant and father of one child.

32.     He began working for Defendant on November 2018, until his abrupt termination on February 10, 2020, when he was terminated.   Plaintiff T. Alexander was not fired for gross misconduct.

33.     Importantly, while Plaintiff Travis Alexander was a participant in Defendant's insurance Plan, his wife and child (aged 16 at the time) were also covered by part of the plan, making them Plan beneficiaries.

34.     As a result of his termination on February 10, 2020, Plaintiff Travis Alexander experienced a qualifying event as defined by 29 U.S.C. § 1163(2).

35.     Following this qualifying event, Defendant caused its COBRA Administrator, Alight Solutions, to mail Plaintiff Travis Alexander the deficient COBRA enrollment notice attached hereto as Exhibit B.  Also, upon information and belief, Defendant mailed to Plaintiff

its "Important Information About Your COBRA Continuation Coverage", containing some – but not all – of the information missing from its COBRA enrollment notice.

36.    The deficient COBRA notice that Plaintiff Travis Alexander received was violative of COBRA's mandates for the reasons set forth herein.

37.    Defendant has in place no administrative remedies Plaintiff Travis Alexander was required to exhaust prior to bringing suit.

38.    Additionally, because no such administrative remedies exist, any attempt to exhaust the same would have been futile.

39.    Plaintiff Travis Alexander suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage and incurred medical bills, due to Defendant's deficient COBRA election notice.

40.    Additionally, after Plaintiff Travis Alexander lost his insurance he refrained from receiving medical treatment – despite having illness requiring treatment – because he lost his health insurance due to Defendant's deficient COBRA notice.

41.    Finally, Plaintiff Travis Alexander suffered an informational injury as a result of Defendant's COBRA notice because he was never provided all information to which she was entitled by 29 C.F.R. § 2590.606-4(b).

### *Plaintiff Jessica Alexander*

42.    Plaintiff Jessica Alexander as the spouse of Plaintiff Travis Alexander, during that time, was also a participant in Defendant's health plan.

43.    Plaintiff Jessica Alexander's husband, Travis Alexander, was employed by Defendant, and importantly, he was not terminated for gross misconduct.

44.    Thus, when Travis Alexander was terminated by Defendant, Plaintiff Jessica Alexander experienced a qualifying event per 29 U.S.C. § 1163(2).

45.    Following this qualifying event, Defendant caused its COBRA Administrator, Alight Solutions, to mail Plaintiff Jessica Alexander the deficient COBRA enrollment notice attached hereto as Exhibit B.  Also, upon information and belief, Defendant mailed to Plaintiff the attached "Important Information About Your COBRA Continuation Coverage", containing some – but not all – of the information missing from its COBRA enrollment notice.

46.    The deficient COBRA notice that Plaintiff received was violative of COBRA's mandates for the reasons set forth herein.

47.    Defendant has in place no administrative remedies Plaintiffs were required to exhaust prior to bringing suit.

48.    Additionally, because no such administrative remedies exist, any attempt to exhaust the same would have been futile.

49.    Plaintiff Jessica Alexander suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage and incurred medical bills, due to Defendant's deficient COBRA election notice.

50.    Additionally, after Plaintiff Jessica Alexander lost her insurance she incurred medical bills resulting in further economic injury.

51.    Finally, Plaintiff Jessica Alexander suffered an informational injury as a result of Defendant's COBRA notice because she was never provided all information to which she was entitled by 29 C.F.R. § 2590.606-4(b).

### *Plaintiff Doris Seelye*

52.     Plaintiff Doris Seelye is a spouse of a former employee of Defendant and, during that time, was also a participant in Defendant's health plan.

53.     Her husband was terminated on May 15, 2017.  Thus, when her husband was terminated by Defendant, Plaintiff Doris Seelye experienced a qualifying event per 29 U.S.C. § 1163(2).

54.     Following this qualifying event, Defendant caused its COBRA Administrator, Alight Solutions, to Plaintiff Doris Seelye the deficient COBRA enrollment notice attached hereto as Exhibit B.  Also, upon information and belief, Defendant mailed to Plaintiff the attached "Important Information About Your COBRA Continuation Coverage", containing some – but not all – of the information missing from its COBRA enrollment notice.

55.     The deficient COBRA notice that Plaintiff received was violative of COBRA's mandates for the reasons set forth herein.

56.     Defendant has in place no administrative remedies Plaintiffs were required to exhaust prior to bringing suit.

57.     Additionally, because no such administrative remedies exist, any attempt to exhaust the same would have been futile.

58.     Plaintiff Doris Seelye suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage and incurred medical bills, due to Defendant's deficient COBRA election notice.

59.     Finally, Plaintiff Jessica Alexander suffered an informational injury as a result of Defendant's COBRA notice because she was never provided all information to which she was entitled by 29 C.F.R. § 2590.606-4(b).

### *Violation of 29 C.F.R. § 2590.606-4(b)(4)(v) –*
### *Failure to explain how to enroll in COBRA*

60.     The governing statute clearly requires that "[t]he notice … shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:…(v) [a]n explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made."   29 C.F.R. § 2590.606-4(b)(4)(v).

61.     As a threshold matter, Defendant's COBRA enrollment notice, Exhibit B, fails to adequately explain the procedures for electing coverage.

62.     Instead, Defendant's COBRA enrollment notice merely directs plan participants to a general phone number, and website, rather than explaining how to actually enroll in COBRA.  To further compound the confusion, the Defendant COBRA enrollment notice contains no instructions on how to actually enroll if one calls the phone number, or visits the website.  The telephone number provided by Defendant in its COBRA enrollment notice is a "catch-all" number individuals can call with questions about anything benefit-related, including retirement funds, etc., as is the website.

63.     This "catch-all" number is actually a phone number to its COBRA Administrator, Alight Solutions, LLC, (an entity never identified in the COBRA notice), which also operates the website link.

64.    A "catch-all" number provided by Defendant and then routed to a third-party call center designed to answer anything HR-related simply cannot meet the strict informational statutory requirements of 29 C.F.R. § 2590.606-4(b)(4)(v) required of all COBRA notices as to enrollment.  The same is true as to the generic website link provided.  Merely directing individuals to a website link and assuming he/she will be able to figure out how to enroll in COBRA once the website is visited simply is very different than actually explaining how to enroll in COBRA.   This is particularly true when an employer fails to identify in its COBRA notice the third-party as its COBRA Administrator, which is precisely what Defendant's notices fails to do here by omitting any mention of Alight Solutions, LLC as its COBRA administrator.  Nor is the Plan Administrator identified.

65.    Unlike the Defendant COBRA notice, the Model DOL notice provides a near fool-proof way to elect COBRA coverage by providing a physical election form to mail in, the date it is due, the name and address to where election forms should be sent, spaces for the names, social security numbers, and type of coverage elected by each plan participant or beneficiary.  (Exhibit A, p. 7).

66.    Defendant's COBRA enrollment notice simply does not contain "an explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made" as required by 29 C.F.R. § 2590.606-4(b)(4)(v).  Merely telling Plaintiffs and the putative class members to call a generic 1-800 number operated by a third-party (actually the COBRA Administrator Defendant fails to bother identifying) and hope they are able to figure out how to enroll after they call is not what is legally required in a COBRA

notice.  Instead, the notice itself must contain information on how to enroll, or allow them to enroll via an enrollment form (like the Model notice does).  Defendant's simply does not.

### *Violation of 29 C.F.R. § 2590.606-4(b)(4)(xii) –*
### *Failure to provide the address to which payments should be sent*

67.    Defendant is specifically required to include in its notice the address to which payments should be sent. 29 C.F.R. § 2590.606-4(b)(4)(xii).

68.    Exhibit B, the COBRA enrollment notice, fails to actually state where payments are to be sent.  This is a per se violation of 29 C.F.R. § 2590.606-4(b)(4)(xii), which on its face requires all COBRA notices include "the address to which payments should be sent."

69.    Defendant's attempt to cure this deficiency by providing a mailing address for payment a second letter only demonstrates that Defendant knows this information must be disclosed, but it failed to do so in the actual COBRA notice (Exhibit B).  Defendant's piecemeal strategy for separating COBRA information does not comport with the law. Rather, as demonstrated by the Model DOL COBRA notice, which is a single cohesive document, 29 C.F.R. § 2590.606-4(b)(4)(xii) contemplates providing the statutorily required information in "a" COBRA notice (singular) rather than in multiple documents which must be read in conjunction with one another for plan participants/beneficiaries to glean the necessary information from.

70.    A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision. Without knowing where to send payment, Plaintiff was misled as to how to enroll in COBRA.

71.     Because of the foregoing deficiencies, Defendant's COBRA notice is legally insufficient. Defendant has misled Plaintiff and the putative class members identified herein about the material parameters and procedures surrounding their right to elect Cobra coverage, failing to comply with the requirements made clear by the Code of Federal Regulations.

### *Violation of 29 C.F.R. § 2590.606-4(b)(4)(i) –*
### *Failure to Identify COBRA and Plan Administrator*

72.     Plaintiffs were unable -- based on either Notice -- to ascertain the party responsible under the plan for the administration of continuation coverage benefits.   More specifically, Defendant failed to identify either the Plan Administrator, or even the COBRA Administrator of the Plan, Alight Solutions, in its COBRA notice.

73.     Defendant was required to provide "in a manner calculated to be understood by the average plan participant ... the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits." 29 C.F.R. § 2590.606- 4(b)(4)(i). Defendant's COBRA Notice, Exhibit B, fails to comply with this straightforward requirement.   Neither the Plan Administrator, nor the Plan's COBRA Administrator, Alight Solutions, are provided.

74.     Defendant's omission of the COBRA administrator's name, Alight Solutions, does not satisfy the election notice requirements of section 2590.606-4(b)(4)(i). Referring Plaintiff and the putative class members to a generic anonymous "Access HR Benefits Center" is not what section 2590.606-4(b)(4)(i) mandates, especially when an entity, like Alight Solutions, is delegated responsibility for COBRA administration.

75. Likewise, Defendant's notice omits any reference to the Plan Administrator's name, address, and telephone number, as required by 29 C.F.R. 2590.606-4(b)(4)(i). Without the plan administrator's name, address, and telephone number, Defendant's notice is not sufficient to permit Plaintiff and the putative class members to make an informed decision whether to elect coverage.

***Violation of 29 C.F.R. § 2590.606-4(b)(4) – Failure to Provide COBRA Notice Written in a Manner Calculated "To Be Understood By the Average Plan Participant"***

76. By failing to adequately explain the procedures for electing coverage, as required by 29 C.F.R. § 2590.606-4(b)(4)(v), coupled with the complete omission of how to actually enroll in COBRA, where to send payment, failure to include all required explanatory information, and even who the Plan Administrator and/or the COBRA Administrator is/was, Defendant cumulatively violated 29 C.F.R. § 2590.606- 4(b)(4).

77. This particular section mandates that employers, like Defendant, must provide a notice of continuation coverage written in a manner calculated "to be understood by the average plan participant."

78. Without the aforementioned critical pieces of, Defendant's COBRA notice cannot be said to be written in a manner calculated "to be understood by the average plan participant." Thus, Defendant violated 29 C.F.R. § 2590.606-4(b)(4)(v).

## CLASS ACTION ALLEGATIONS

79. Plaintiffs brings this action as a class action pursuant to the Federal Rules of Civil Procedure on behalf of the following persons:

**All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant that did not comply**

**with 29 C.F.R. § 2590.606-4(b) as a result of a qualifying event, as determined by Defendant's records, who did not elect COBRA during the applicable statute of limitations period.**

80.    No administrative remedies exist as a prerequisite to Plaintiffs' claims on behalf of the Putative Class.   As such, any efforts related to exhausting such non-existent remedies would be futile.

81.    <u>**Numerosity**</u>: The Class is so numerous that joinder of all Class members is impracticable. On information and belief, hundreds or thousands of individuals satisfy the definition of the Class.  Thus, it is more than reasonable to assume the class is so numerous that joinder of all class members is impracticable.

82.    <u>**Typicality**</u>: Plaintiffs' claims are typical of the Class.  The COBRA notices Defendant sent to Plaintiff were form notices uniformly provided to all Class members. As such, the COBRA notices that Plaintiff received were typical of the COBRA notices that other Class Members received, and suffered from the same deficiencies.

83.    <u>**Adequacy**</u>: Plaintiffs will fairly and adequately protect the interests of the Class members, he has no interests antagonistic to the class, and retained counsel experienced in complex class action litigation.

84.    <u>**Commonality**</u>: Common questions of law and fact exist as to all members of  the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

      a.    Whether the Plan is a group health plan within the meaning of 29 U.S.C.

        § 1167(1).

    b.   Whether Defendant's COBRA notice complied with the requirements of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

    c.   Whether statutory penalties should be imposed against Defendant under 29 U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements and, if so, in what amount;

    d.   The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and

    e.   Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

85.    Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices and the adequacy of its COBRA notice. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

86.    Plaintiffs intends to send notice to all Class Members to the extent required the Federal Rules of Civil Procedure. The names and addresses of the Class Members are available from Defendant's records, as well as from Defendant's COBRA administrator, Alight Solutions.

**CLASS CLAIM I FOR RELIEF**
*Violation of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4*

87.     The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

88.     Defendant is the sponsor and administrator of the Plan, and was subject to the continuation of coverage and notice requirements of COBRA.

89.     Plaintiffs and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware that they had experienced such a qualifying event.

90.     On account of such qualifying event, Defendant sent Plaintiffs and the Class Members a COBRA notice in the form attached hereto as Exhibit B.

91.     The COBRA notices that Defendant sent to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above.

92.     These violations were material and willful.

93.     Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiffs and other Class Members.

94.     Defendant ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

95.     Defendant knew or had reason to know that its conduct was inconsistent with the law and regulations at issue, evidenced by the fact that it was aware of but choose not to use the DOL Model Notice.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, prays for relief as follows:

a.     Designating Plaintiffs' counsel as counsel for the Class;

b.     Issuing proper notice to the Class at Defendant's expense;

c.     Declaring that the COBRA notice sent by Defendant to Plaintiffs and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

d.     Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

e.     Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member sent a defective COBRA notice by Defendant;

f.     Awarding attorneys' fees, costs and expenses to Plaintiffs' counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

g.     Granting such other and further relief, in law or equity, as this Court deems appropriate.

Dated this 14th day of May, 2020.

Respectfully submitted,

*/s/Brandon J. Hill*
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnichols@wfclaw.com
**Attorneys for Plaintiff**

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 14th day of May, 2020, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will send a

notice of the electronic filing to all counsel of record.

*/s/Brandon J. Hill*
**BRANDON J. HILL**